IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Magistrate Judge Boyd N. Boland

Civil Action No. 05-cv-01275-MSK-BNB

GOODWILL INDUSTRIAL SERVICES CORPORATION, a Colorado nonprofit corporation,

Plaintiff,

v.

COMMITTEE FOR PURCHASE FROM PEOPLE WHO ARE BLIND OR SEVERELY
DISABLED, an agency of the United States Government,
COLORADO DIVISION OF VOCATIONAL REHABILITATION, a Colorado governmental
agency,
KEVAN WORLEY, an individual,
BLACKSTONE CONSULTING, INC., a California corporation,
SERVICESOURCE, INC., a Virginia nonprofit corporation, and
THE UNITED STATES OF AMERICA,

Defendants.

_____

## ORDER

_____

This matter is before me on **Plaintiff's Motion for Preliminary Injunction** (the
"Motion"), filed July 11, 2005.[1]  Because I find that this Court does not have jurisdiction over
the subject matter of the Motion, the Motion is DENIED.

## I.  BACKGROUND

Defendant Committee for the Purchase From People Who Are Blind or Severely
Disabled (the "Committee") is an agency of the United States established by the Javits-Wagner-
O'Day ("JWOD") Act, 41 U.S.C. §§ 46-48c.  The mission of the Committee is to create

---

[1]The Motion was referred to me for a final determination pursuant to 28 U.S.C. §636(c).
*Order Referring Determination of Motion for Preliminary Injunction dated July 22, 2005.*

employment for people who are blind or have other severe disabilities through the federal procurement process by means of the JWOD Program. *Response in Opposition to Plaintiff's Motion for Injunctive Relief* (the "Response"), Exhibit A-1, ¶ 3. The Committee carries out its mission by requiring that certain products and services purchased by federal government agencies be procured from nonprofit agencies that employ blind or severely disabled individuals. 41 U.S.C. § 48.

Nonprofit agencies must meet the legal qualifications set forth in 41 U.S.C. § 48b(3)-(4) and the regulatory criteria set forth at 41 C.F.R. §§ 51-4.2 and 51-4.3 in order to qualify for the JWOD Program. Nonprofit agencies are selected for a specific product or service by the designated central nonprofit agency, in this case NISH, Inc., as authorized by 41 U.S.C. § 47(c) and 41 C.F.R. §§ 51-3.1 and 51-3.2. *Response*, Exhibit A-1, ¶ 5. The plaintiff, Goodwill Industrial Services Corporation ("Goodwill"), has been approved as a qualified nonprofit agency under the JWOD Act. *Motion*, Exhibit A, ¶ 2.

On May 23, 2005, Fort Carson awarded a contract for full food services (the "Prime Contract") to defendants Colorado Division of Vocational Rehabilitation ("DVR"), Kevan Worley, and Blackstone Consulting, Inc., effective June 1, 2005. *Complaint*, ¶¶ 18, 22. On May 31, 2005, DVR, Worley and Blackstone Consulting, Inc., entered into a subcontract with Goodwill for the provision of dining facility attendant services at Fort Carson (the "Subcontract").[2] Id. at ¶ 23 and Exhibit 1.

On June 24, 2005, the Committee issued a communication captioned "Notice of Change

---

[2]Attendant services at the Fort Carson military troop dining facilities was added to the JWOD Procurement List in September 1998.

to Procurement List - Transfer of Responsibility." Id. at Exhibit 2.  The Notice states that dining

facility attendant services at Fort Carson are transferred from Goodwill to defendant

ServiceSource, Inc., effective August 1, 2005.  Id.  Goodwill asserts that the Committee does not

have the authority to cancel or otherwise interfere with the Subcontract.  Goodwill seeks an

injunction enjoining the Committee from cancelling or otherwise interfering with the

Subcontract.

## II.  SOVEREIGN IMMUNITY

The parties do not dispute that the Motion is brought against the Committee and that the

Committee is an agency of the United States.  It is a well-established principle that "[a]s a

sovereign, the United States 'is immune from suit save as it consents to be sued and the terms of

its consent to be sued in any court define the court's jurisdiction to entertain the suit.'"  Lee v.

United States, 980 F.2d 1337, 1340 (10th Cir. 1992) (quoting United States v. Sherwood, 312

U.S. 584, 586 (1941)).  Sovereign immunity shields the Federal Government and its agencies

from suit.  Department of the Army v. Blue Fox, Inc., 525 U.S. 255, 260 (1999).  The

government consents to be sued only when Congress unequivocally expresses its intention to

waive the government's sovereign immunity in statutory text.  United States v. Nordic Village,

Inc., 503 U.S. 30, 37 (1992).  Sovereign immunity extends to injunctive relief.  United States v.

Murdock Machine and Engineering Co. of Utah, 81 F.3d 922, 929-30 (10th Cir. 1996) (citing

Hatahley v. United States, 351 U.S. 173, 176 (1956).

"A waiver of sovereign immunity cannot be implied but must be unequivocally

expressed."  United States v. Mitchell, 445 U.S. 535, 538 (1980) (internal quotations and citation

omitted).  The plaintiff bears the burden of establishing waiver to sovereign immunity.  Fostvedt

v. United States, 978 F.2d 1201, 1203 (10th Cir. 1992).  A matter must be dismissed "[w]henever

it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject

matter."  Fed. R. Civ. P. 12(h)(3).  "[A] court can determine the merits of a controversy only if

jurisdiction exists at all stages of the proceeding."  Amalgamated Sugar Co. v. Bergland, 664

F.2d 818, 822 (10th Cir. 1981).

## III.  ANALYSIS

A long and tortured history exists regarding judicial review of cases that challenge

governmental contract procurement decisions.  Emery Worldwide Airlines, Inc., v. United

States, 264 F.3d 1071, 1078 (Fed. Cir. 2001); Peter Verchinski, Note, *Are District Courts Still a*

*Viable Forum for Bid Protests?*, 32 Pub. Cont. L.J. 393, 395 (2003).  A brief review of that

history was provided by the Federal Circuit Court of Appeals in Emery:

> In 1940, the Supreme Court in *Perkins v. Lukens Steel Co.*, 310
> U.S. 113, 60 S.Ct. 869, 84 L.Ed. 1108 (1940), held that aggrieved
> protesters lacked standing to challenge government contract
> awards in federal courts.  The *Perkins* Court reasoned that the
> Public Contracts Act of 1936 was designed solely to protect the
> government.  *Id.* at 125, 60 S.Ct. 869.  That is, the Supreme Court
> determined that disappointed potential contractors had no standing
> because they suffered no legally cognizable injury.
>
> After *Perkins*, government contract procurement cases were
> brought in the Court of Federal Claims on a limited basis under a
> theory that the government made an implied contract with
> prospective bidders to fairly consider their bids.  *Heyer Prods. Co.*
> *v. United States*, 135 Ct.Cl. 63, 140 F.Supp. 409 (1956).  This
> venue was available because the Tucker Act granted the Court of
> Federal Claims jurisdiction over claims founded on implied
> contracts with the United States, 28 U.S.C. § 1491(a).  Prior to
> 1982, Court of Federal Claims review was narrow and an
> aggrieved party was typically limited to monetary relief.  *Impresa*,
> 238 F.3d at 1331.  In 1982, Congress enacted the Federal Courts
> Improvement Act of 1982 ("FICA"), Pub.L. No. 97- 164, § 133(a),
> 96 Stat. 25, 40 (1982), which, inter alia, granted the Court of

Federal Claims jurisdiction to provide declaratory and injunctive relief. *Id.* In 1983, however, the Federal Circuit limited Court of Federal Claims jurisdiction in government procurement actions to cases brought before a contract is awarded. *United States v. John C. Grimberg Co.*, 702 F.2d 1362, 1372 (Fed.Cir.1983) (en banc).

Following passage of the APA in 1946, the District of Columbia Circuit in *Scanwell Laboratories, Inc. v. Shaffer*, 424 F.2d 859 (D.C.Cir.1970), held that government contract procurements were reviewable in federal district courts. The *Scanwell* court determined that standing to challenge agency actions was grounded in the judicial review provisions of the APA.

In 1996, Congress passed the Administrative Dispute Resolution Act of 1996 ("ADRA"), Pub.L. No. 104-320, 110 Stat. 3870 (1996). This statute provides in part:

> Both the [United] States Court of Federal Claims and the district courts of the United States shall have jurisdiction to render judgment on an action by an interested party objecting to a solicitation by a Federal agency for bids or proposals for a proposed contract or to a proposed award or the award of a contract or any alleged violation of statute or regulation in connection with a procurement or proposed procurement. Both the United States Court of Federal Claims and the district courts of the United States shall have jurisdiction to entertain such an action without regard to whether suit is instituted before or after the contract is awarded.

28 U.S.C. § 1491(b)(1) (Supp. V 1999) (emphasis added). This statutory provision allowed both federal district courts and the Court of Federal Claims to hear "the full range of cases previously subject to review in either system." 142 Cong. Rec. S11849 (daily ed. Sept. 30, 1996) (statement of Sen. Levin).

Emery, 264 F.3d at 1078-79.

Goodwill asserts that jurisdiction lies under 28 U.S.C. § 1331 (federal question

jurisdiction), 28 U.S.C. § 2201-02 (declaratory judgments), and the Administrative Procedure

Act ("APA"), 5 U.S.C. §§ 701-706.[3] *First Amended Complaint for Declaratory and Injunctive Relief*, filed July 25, 2005; *Plaintiff's Hearing Brief in Support of Motion for Preliminary Injunction*, p. 2.  Neither section 1331 nor sections 2201-2202 constitutes a waiver of sovereign immunity.  Fostvedt, 978 F.2d at 1203 (holding that statutes conferring general jurisdiction, including 28 U.S.C. § 1331, do not waive sovereign immunity); Amalgamated Sugar, 664 F.2d at 822 (stating that section 2201 "does not itself confer jurisdiction on a federal court where none otherwise exists").  Thus, any waiver of the Committee's sovereign immunity must come from the APA.

The APA provides a limited waiver of sovereign immunity.  City of Albuquerque v. United States Department of the Interior, 379 F.3d 901, 907 (10th Cir. 2004).  Under 5 U.S.C. § 702:

> A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof. An action in a court of the United States seeking relief other than money damages and stating a claim that an agency or an officer or employee thereof acted or failed to act in an official capacity or under color of legal authority shall not be dismissed nor relief therein be denied on the ground that it is against the United States or that the United States is an indispensable party. The United States may be named as a defendant in any such action, and a judgment or decree may be entered against the United States: *Provided*, That any mandatory or injunctive decree shall specify the Federal officer or officers (by name or by title), and their successors in office, personally responsible for compliance. Nothing herein (1) affects other limitations on judicial review or the power or duty of the court to dismiss any action or deny relief

---

[3] Shortly after the Committee filed its response to Goodwill's Motion for injunctive relief, Goodwill filed an Amended Complaint in which it changed its jurisdictional basis from "28 U.S.C. §§ 1331, 1346(a)(2), and 2201-2202" to "28 U.S.C. §§ 1331 and 2201-2202 and the Administrative Procedures Act, 5 U.S.C. §§ 701-706."

on any other appropriate legal or equitable ground; or (2) confers
authority to grant relief if any other statute that grants consent to
suit expressly or impliedly forbids the relief which is sought.

The APA's waiver of sovereign immunity is limited because it does not confer "authority
to grant relief if any other statute that grants consent to suit expressly or impliedly forbids the
relief which is sought." City of Albuquerque, 379 F.3d at 907. In this case, the Administrative
Dispute Resolution Act of 1996 (the "ADRA") forbids the relief sought.[4]

As noted in Emery, Congress enacted the ADRA in 1996. The ADRA conferred
jurisdiction on both the federal district courts and the Court of Federal Claims "to render
judgment on an action by an interested party objecting to a solicitation by a Federal agency for
bids or proposals for a proposed contract or to a proposed award or the award of a contract or
any alleged violation of statute or regulation in connection with a procurement or proposed
procurement." 28 U.S.C. § 1491(b)(1). The ADRA permitted the courts to award any relief the
court considered proper, "including declaratory and injunctive relief," and required the courts to
review the agency's decision pursuant to the standards set forth in the APA. Id. at §§ (b)(2) and
(b)(4).

As a part of the ADRA, however, Congress enacted a sunset provision providing that

_____

[4]After Goodwill amended its Complaint to add the APA as a jurisdictional basis, the
Committee purported to concede that subject matter jurisdiction exists under the APA. The
Committee cited Neighbors for Rational Development, Inc. v. Norton, 379 F.3d 956, 961 (10th
Cir. 2004), in support of its determination that the APA constitutes a waiver of sovereign
immunity. Neighbors does not address governmental contract procurement protests, however.
    I am obligated--despite the Committee's mistaken determination that the APA constitutes
a waiver of sovereign immunity in this case--to analyze the issue of subject matter jurisdiction.
Fed. R. Civ. P. 12(h)(3). "It has long been settled that officers of the United States possess no
power through their actions to waive an immunity of the United States or to confer jurisdiction
on a court in the absence of some express provision by Congress." United States v. N.Y. Rayon
Importing Co., Inc., 329 U.S. 654, 660 (1947).

"[t]he jurisdiction of the district courts of the United States over the actions described in section 1491(b)(1) . . . shall terminate on January 1, 2001, unless extended by Congress." Id. at Historical and Statutory Notes, "Sunset Provisions." Congress did not extend the district courts' grant of jurisdiction. Emery, 264 F.3d at 1079.

After reviewing comments by Senators involved in enacting the legislation, the Emery court determined that Congress' intent in enacting the ADRA with the sunset provision was to ultimately vest jurisdiction for judicial review of government contract protest actions solely in the Court of Federal Claims. Emery, 264 F.3d at 1079-80; but see Note, 32 Pub. Cont. L.J. 393, 400-03. Emery holds that "the Court of Federal Clams is the only judicial forum to bring any governmental contract procurement protest." Id. at 1080.

The United States District Court for the District of Columbia analyzed the interplay between the ADRA and the APA in Novell, Inc. v. United States, 109 F.Supp.2d 22 (D.D.C. 2000), stating:

> Congress effectively subsumed APA jurisdiction of the district courts into the more specific jurisdictional language of ADRA. The statute authorizes jurisdiction for both courts without making any distinction between the two courts. *See* 28 U.S.C. § 1491(b). The law also specifies that both courts shall review agency actions under the "arbitrary and capricious" standard of the APA. *See* 28 U.S.C. § 1491(b)(4) (stating that courts shall review actions under the law pursuant to "the standards set forth in section 706 of title 5.") The selection of the APA standard of review adds credence to the argument that lawmakers believed they were codifying the *Scanwell* jurisdiction with the enactment of Section 1491(b). More importantly, . . . the 1996 statute includes a sunset provision that will terminate district court jurisdiction over bid protest actions as of 2001. *See* Pub.L. No. 104-320, § 12(d), 110 Stat. at 3875. Since the sunset provision terminates actions under Section 1491(b)(1) and makes no mention of terminating *Scanwell* jurisdiction, it would defeat the purpose of the sunset clause if these cases could still be brought in district court under the APA.

8

Id. at 24-25 (citations to footnotes and to the parties' briefs omitted).

I am persuaded by the court's reasoning in Novell, and I agree with the court's conclusion in Emery.  Following the effective date of the ADRA sunset provision terminating district court jurisdiction under section 1491(b)(1), district courts lack jurisdiction to hear government contract procurement protests brought by interested parties.

I am aware that, subsequent to the enactment of the ADRA, the Court of Appeals for the District of Columbia Circuit held that, pursuant to Scanwell, disappointed bidders may challenge governmental contracts in a district court under the APA.  Iceland Steamship Co. Ltd.-Eimskip v. United States Dept. of the Army, 201 F3d 451, 453 (D.C. Cir. 2000).  The Iceland Steamship court did not acknowledge the ADRA, however, nor did it engage in any discussion regarding the ADRA's interplay with the APA.  Therefore, I do not find Iceland Steamship persuasive, and I decline to follow it.

The Tenth Circuit Court of Appeals has recognized the split in circuit authority resulting from the decisions in Emery (where the Federal Circuit held that after the sunset of the district courts' jurisdiction under the ADRA, the Court of Federal Claims is the only judicial forum in which to bring a government contract procurement protest) and Iceland Steamship (where the D.C. Circuit Court of Appeals allowed a disappointed government contract bidder to bring suit in a district court post-ADRA based on the APA as explained in Scanwell).  City of Albuquerque, 379 F.3d at 909.  The Tenth Circuit has not taken a position on the issue, however.

A closely related issue was decided by the Tenth Circuit Court of Appeals in the City of Albuquerque case.  There, the City brought suit challenging the procedures used by the

Department of Interior in selecting a site for new office space.  Id. at 904.  The City alleged that the Interior Department violated an Executive Order and associated regulations during the selection process.  Id. at 905.  The Interior Department argued that the federal district court lacked jurisdiction to hear the case because the Tucker Act, as amended by the ADRA, 28 U.S.C. § 1491, waived the United States' sovereign immunity for limited claims and required that such claims be brought only in the Court of Federal Claims.  Id. at 907.  The Tenth Circuit summarized the argument as follows:

> The thrust of Interior's argument is "[i]n granting express, concurrent protest jurisdiction to the district courts, the [Administrative Dispute Resolution Act] also took away the historical basis for district court protest jurisdiction under [*Scanwell Laboratories, Inc. v. Shaffer* ], 424 F.2d 859 (D.C.Cir.1970)."  "Thus," Interior argues, "when the district courts lost bid protest jurisdiction under [the sunset provision], they also lost the ability to independently review such actions under the [Administrative Procedure Act]."

Id.

The Tenth Circuit rejected the Interior Department's argument, however, and held that the City's protest could proceed in the district court and that jurisdiction was not limited to the Court of Federal Claims.  Id. at 910-11.  The Court stated:

> [W]e need not determine today whether district courts retain jurisdiction over bid protests brought by disappointed bidders under *Scanwell* and the Administrative Procedure Act, because the case before us is not brought by a disappointed bidder or potential bidder.

* * *

> [W]e conclude the Administrative Dispute Resolution Act only waives sovereign immunity for a suit in the Federal Court of Claims when the suit is brought by an actual or prospective bidder. Because the City in this case is not an actual or prospective bidder, its case does not fall within the ambit of the Administrative Dispute Resolution Act or the subject matter jurisdiction of the Court of Federal Claims.
>
> We take [this] reasoning one step further and conclude the Federal Dispute Resolution Act did not affect the district courts' jurisdiction to hear cases that are not brought by an actual or potential bidder.

Id.

In reaching this conclusion, the circuit court focused on the language of the ADRA, 28 U.S.C. § 1491(b), which is limited to suits brought by "an interested party":

> Both the [United] States Court of Federal Claims and the district courts of the United States shall have jurisdiction to render judgment on an action by an interested party objecting to a solicitation by a Federal agency for bids or proposals for a proposed contract or to a proposed award or the award of a contract or any alleged violation of statute or regulation in connection with a procurement or a proposed procurement.

28 U.S.C. § 1491(b)(1) (emphasis added).

The Tenth Circuit also relied on and adopted the reasoning of the Court of Appeals for the Federal Circuit in American Fed'n of Gov't Employees Local 1482 v. United States, 258 F.3d 1294, 1302 (Fed.Cir. 2001), which held that the term "interested party" as used in the ADRA "is limited to an actual or prospective bidder or offeror whose direct economic interest would be affected by the award of the contract or by failure to award the contract."

In adopting the Federal Circuit's ruling in the Local 1482 case, the Tenth Circuit stated:

> Because of the Federal Circuit's "exclusive role in [cases brought under 28 U.S.C. § 1491(b)], it makes sense for us to adopt that circuit's interpretation of the term 'interested party' " whether or

11

not we would have adopted that interpretation in the first instance.

City of Albuquerque, 379 F.3d at 910.

Unlike the facts in City of Albuquerque, the plaintiff in the instant case (Goodwill) is an actual or prospective bidder and is an "interested party" within the meaning of § 1491(b)(1) of the ADRA. Consequently, the Tenth Circuit's decision in City of Albuquerque does not provide the answer to the issue presented here--whether the ADRA precludes review in a district court of a bid challenge by a disappointed bidder or potential bidder. City of Albuquerque, 379 F.3d at 911 n.5 ("We again emphasize this opinion expresses no view as to whether a bidder may bring a contract procurement-type suit in district court under *Scanwell* and the Administrative Procedure Act").[5]

I adopt the reasoning of the court in Novell, 109 F.Supp.2d at 24-25, that as a result of the sunset provision of the ADRA, that act forbids the district courts from exercising jurisdiction in government contract procurement protests brought by disappointed bidders or potential bidders such as Goodwill. I find that the ADRA confers exclusive jurisdiction on the Court of Federal Claims to hear government contract procurement protests by interested parties, thereby forbidding such actions in the district courts under the APA and Scanwell. In the face of the sunset provision of the ADRA, the limited waiver of sovereign immunity provided by the APA cannot operate to confer jurisdiction on this Court in this case.

IT IS ORDERED that the Motion is DENIED for lack of subject matter jurisdiction.

---

[5]In its analysis of the definition of an "interested party," however, the Tenth Circuit did state that "the Administrative Dispute Resolution Act only waives sovereign immunity for a suit in the Federal Court of Claims when the suit is brought by an actual or prospective bidder." Id. at 910-11.

Dated July 28, 2005.

BY THE COURT:

/s/ Boyd N. Boland
United States Magistrate Judge